UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————

JESUS MAURICIO FIGUEREDO CASTILLO,

      Petitioner,    26-cv-2229 (JGK)

  - against -      MEMORANDUM OPINION
             AND ORDER

PAUL ARTETA, ET AL.,

      Respondents.

————————————————————————————

JOHN G. KOELTL, District Judge:

  Jesus Mauricio Figueredo Castillo ("Figueredo Castillo") is a native and citizen of Venezuela. As a Venezuelan national, Figueredo Castillo was previously granted Temporary Protected Status ("TPS"), which protects qualifying aliens from "designated" countries from detention and removal. On February 24, 2026, United States Immigration and Customs Enforcement ("ICE") arrested Figueredo Castillo at a regularly scheduled check-in. According to the Government, Figueredo Castillo's TPS was lawfully withdrawn earlier that month when the Secretary of the Department of Homeland Security ("DHS") terminated Venezuela's TPS designation.

  Figueredo Castillo petitioned this Court for a writ of habeas corpus and moved for a temporary restraining order and preliminary injunction ordering the Government to release him from detention. On March 18, 2026, the Court issued a temporary restraining order and the petitioner was released from custody.

However, for the following reasons, Figueredo Castillo's motion for a preliminary injunction is **denied.**

**I.**

Based on the submissions of the parties, the Court finds the following facts and reaches the following conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(2).

**A.**

TPS is a humanitarian program created by the Immigration Act of 1990. Pub. L. No. 101-649, 104 Stat. 4978 (Nov. 29, 1990). TPS allows the DHS Secretary, "after consultation with appropriate agencies of the Government, [to] designate a foreign state."[1] 8 U.S.C. § 1254a(b)(1). After the country has been designated, qualifying aliens from that country may apply for protection from immigration-related detention and removal. Id. § 1254a(a), (c), (d)(4).

When the DHS Secretary designates a country under the TPS program, that designation lasts for a "period, specified by the [DHS Secretary], of not less than 6 months and not more than 18 months." Id. § 1254a(b)(2). Before the initial designation period expires, the DHS secretary must decide whether to maintain the designation. Id. § 1254a(b)(3)(A). If the DHS Secretary determines at least sixty days before the designation is set to

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

2

expire that the designation is no longer warranted, then the designation will terminate at the end of the initial designation period. Id. § 1254a(b)(3)(A), (b)(3)(B). However, if the DHS Secretary instead decides not to terminate the country's designation at least sixty days before the initial designation is set to expire, then that designation "is extended for an additional period of 6 months (or, in the discretion of the [DHS Secretary], a period of 12 or 18 months)." Id. § 1254a(b)(3)(C).

While a country is designated under the TPS program, an alien from that country may apply for TPS if the alien satisfies certain conditions. See, e.g., id. § 1254a(c)(1)(A)(i) (requiring continuous physical presence); id. § 1254a(c)(1)(A)(iii) (requiring that the alien be "admissible as an immigrant"); id. § 1254a(c)(2)(B) (requiring that the alien not have "been convicted of any felony or 2 or more misdemeanors committed in the United States"). If the alien satisfies these conditions and follows the procedure for submitting a valid TPS application, then United States Citizenship and Immigration Services ("USCIS") "may grant the alien [TPS] in the United States." 8 U.S.C. § 1254a(a)(1)(A).

While an alien enjoys TPS, the DHS Secretary "shall not remove the alien from the United States during the period in which such status is in effect." Id. Furthermore, "[a]n alien provided [TPS] ... shall not be detained by the [DHS Secretary] on the

basis of the alien's immigration status in the United States." Id. § 1254a(d)(4).

Once an alien is granted TPS, the DHS Secretary may withdraw TPS for one of four reasons. Most relevant for purposes of this case, an alien's TPS may be withdrawn when the designation of the alien's country of origin is terminated. DHS regulations provide that "[u]pon the termination of designation of a foreign state," aliens from that state lose their TPS on "the sixtieth ... day after the date [on which] notice of termination is published in the Federal Register, or on the last day of the most recent extension of designation by the [DHS Secretary]." 8 C.F.R. § 244.19. This provision applies only "to documentation and authorization issued or renewed after the effective date of the publication of notice of the determination." 8 U.S.C. § 1254a(d)(3).

**B.**

On March 9, 2021, then-DHS Secretary Alejandro Mayorkas designated Venezuela pursuant to the TPS statute. 86 Fed. Reg. 13574 (Mar. 9, 2021). Then-Secretary Mayorkas extended Venezuela's designation three times. On September 8, 2022, he extended Venezuela's TPS designation through March 10, 2024, 87 Fed. Reg. 55024 (Sep. 8, 2022); on October 3, 2023, he extended Venezuela's TPS designation through September 10, 2025, 88 Fed. Reg. 68130 (Oct. 3, 2023); and, finally, on January 17, 2025, he

4

extended Venezuela's TPS designation through October 2, 2026, 90 Fed. Reg. 5961 (Jan. 17, 2025).

On February 3, 2025, then-DHS Secretary Kristi Noem published a notice in the Federal Register that she was vacating the January 2025 decision to extend Venezuela's TPS designation. 90 Fed. Reg. 8805 (Feb. 3, 2025). On February 5, 2025, then-Secretary Noem published another notice that she was terminating Venezuela's TPS designation. 90 Fed. Reg. 9040 (Feb. 5, 2025). The February 5, 2025 notice provided that the termination of Venezuela's TPS designation would expire on the date provided by former-Secretary Mayorkas's October 2023 notice — September 10, 2025. Id. at 9041, 9044.

### C.

On February 19, 2025, the National TPS Alliance — an organization of TPS recipients — challenged former-Secretary Noem's vacatur and termination decisions in the United States District Court for the Northern District of California. Nat'l TPS All. v. Noem, No. 25-cv-1766 (N.D. Cal. 2025), ECF No. 1. On March 31, 2025, that court granted the plaintiffs' motion to postpone the effective date of the vacatur and termination decisions until the plaintiffs' claims were adjudicated on the merits. Nat'l TPS All. v. Noem, 773 F. Supp. 3d 807, 868 (N.D. Cal. 2025).

On May 19, 2025, the Supreme Court stayed the district court's order. See Noem v. Nat'l TPS All., 145 S. Ct. 2728

5

(2025) (Mem.). That stay, however, was "without prejudice to any challenge to Secretary Noem's February 3, 2025 vacatur notice insofar as it purports to invalidate" certain TPS documentation issued with October 2, 2026 expiration dates. Id. at 2729 (citing 8 U.S.C. § 1254a(d)(3)).

On May 30, 2025, the district court "order[ed] that, to preserve the status and rights of those TPS holders ... who received EADs, Forms I-797, Notices of Action, and Forms I-94 issued with October 2, 2026 expiration dates pursuant to the January 17, 2025, extension of TPS for Venezuela, as referenced in the Supreme Court's order of May 19, 2025[,] the effective date of the portion of the Secretary's vacatur decision purporting to invalidate those documents is postponed pending resolution of this case on the merits." Nat'l TPS All. v. Noem, No. 25-cv-1766, 2025 WL 1547628, at *7 (N.D. Cal. May 30, 2025). The Government did not appeal that order.

On September 5, 2025, the district court entered summary judgment for the plaintiffs on their claim under the Administrative Procedure Act and set aside former-Secretary Noem's vacatur and termination decisions. Nat'l TPS All. v. Noem, 798 F. Supp. 3d 1108, 1164 (N.D. Cal. 2025). On October 3, 2025, the Supreme Court again stayed the district court's order, this time "pending the disposition of the Government's appeal in the United State Court of Appeals for the Ninth Circuit and the

6

disposition of a petition for a writ of certiorari, if such writ is timely sought." Noem v. Nat'l TPS All., 146 S. Ct. 23 (2025) (Mem.).

Notwithstanding the Supreme Court's stay, the Court of Appeals for the Ninth Circuit affirmed the district court's September 5, 2025 decision. Nat'l TPS All. v. Noem, 166 F.4th 739, 748-49 (9th Cir 2026). On March 11, 2026, a divided Court of Appeals for the Ninth Circuit denied rehearing en banc. Nat'l TPS All. v. Noem, 169 F.4th 796 (9th Cir. 2026).

While the Court of Appeals was considering the Government's appeal of the district court's September 5 decision, the district court issued another order on December 10, 2025. Nat'l TPS All. v. Noem, No. 25-cv-1766, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025). Unlike the September 5 order, which set aside the challenged vacatur and termination decisions, the December 10 order granted the plaintiffs' motion for a declaratory judgment, which provided that "(1) [former-Secretary Noem's] vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." Id. at *3. The Government appealed the district court's order, and the Court of Appeals for the Ninth Circuit has not yet issued a ruling. See Nat'l TPS All. v. Noem, No. 26-187 (9th Cir. 2026).

**D.**

Figueredo Castillo, a native of Venezuela, entered the United States unlawfully on September 17, 2022. Declaration of John Cordero Perez ("Cordero Perez Decl.") ¶¶ 3-5, ECF No. 11. Figueredo Castillo was initially detained by United States Customs and Border Protection but was released on parole. Id. On January 17, 2024, Figueredo Castillo filed an Application for Temporary Protected Status with USCIS. Id. ¶¶ 8-9. On June 26, 2025, USCIS approved Figueredo Castillo's application for TPS and work authorization until April 2, 2025. Id. ¶ 10.

On September 9, 2025, Figueredo Castillo applied with USCIS to re-register his TPS. Id. ¶ 13. On November 20, 2025, two months after then-Secretary Noem issued her vacatur and termination decisions, USCIS administratively closed Figueredo Castillo's TPS re-registration application. Id. ¶ 14. Therefore, Figueredo Castillo was no longer eligible for TPS.

On February 25, 2026, ICE detained Figueredo Castillo after a scheduled check-in at 26 Federal Plaza in Manhattan and served him with a Notice to Appear ("NTA"). The NTA charged Figueredo Castillo as inadmissible pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. Cordero Perez Decl. ¶ 15.

8

On March 18, 2026, Figueredo Castillo petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, and sought a temporary restraining order and preliminary injunction requiring his immediate release from custody, ECF No. 3. The Court granted the temporary restraining order on March 18, 2026. ECF No. 5. The petitioner was released shortly thereafter. On March 27, 2026, the Court extended the temporary restraining order through April 14, 2026. ECF No. 9. On April 13, 2026, the Court, with the respondents' consent, extended the temporary restraining order again until April 20, 2026. ECF No. 15.

## II.

Congress has authorized federal district courts to grant a writ of habeas corpus "whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516–17 (2003)).

Where, as here, a habeas petitioner is seeking a preliminary injunction requiring his release from custody, the petitioner must establish that (1) he is likely to succeed on the

9

merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

### III.

Figueredo Castillo first argues that his detention was unlawful because he has TPS, which protects him from detention and removal. See 8 U.S.C. § 1254a; see also 8 C.F.R. § 244. According to Figueredo Castillo, DHS's decisions vacating the January 2025 extension of Venezuela's TPS designation and terminating Venezuela's TPS designation were unlawful, and thus he still enjoys TPS and its protections.

### A.

Figueredo Castillo's contends that DHS's vacatur and termination decisions were unlawful, and thus he still has TPS. Figueredo Castillo argues that, as a TPS holder, he cannot be removed or detained. 8 U.S.C. § 1254a(d)(4) ("An alien provided [TPS] ... shall not be detained by the [DHS Secretary] on the basis of the alien's immigration status in the United States.").

Figueredo Castillo does not independently challenge the validity of former-Secretary Noem's vacatur and termination orders. Instead, his sole argument is that the December 10, 2025 ruling of the United States District Court for the Northern District of California collaterally estops the respondents in

10

this case from arguing that the vacatur and termination orders are lawful.[2] But that argument is unpersuasive.

As an initial matter, "nonmutual offensive issue preclusion is unavailable against the United States." Trump v. CASA, Inc., 606 U.S. 831, 852 n.13 (2025); see also Benenson v. Comm'r of Internal Revenue, 910 F.3d 690, 697-98 (2d Cir. 2018) (noting that nonmutual offensive issue preclusion does not extend to federal government employees acting in their official capacities). For an earlier decision to bind the United States, the "subsequent suit [must be] between the same parties or their privies." Montana v. United States, 440 U.S. 147, 153 (1979). Although Figueredo Castillo acknowledges that he was not a party to the litigation in the Northern District of California, he nonetheless contends that there is mutuality of parties because he is a member of the National TPS Alliance, which is a plaintiff in the Northern District of California action.

Figueredo Castillo cites no authority to support his contention that the members of an association are the same as the association itself for purposes of issue preclusion. Indeed,

---

[2] The Government argues that the December 10 declaratory-judgment order was unlawful in the first place because the district court lacked jurisdiction to issue such an order. The respondents note that the TPS statute provides that "[t]here is no judicial review of any determination ... with respect to the designation, or termination or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A). However, because the December 10 declaratory-judgment order is not issue preclusive, it is unnecessary to reach this argument.

it is difficult to distinguish Figueredo Castillo's theory of mutuality of parties from the doctrine of "virtual representation" that the Supreme Court rejected in Taylor v. Sturgell, 553 U.S. 880, 900 (2008). In that case, the Supreme Court explained that "[a] party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) [t]he interests of the nonparty and her representative are aligned"; "(2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty"; and there was "(3) notice of the original suit to the persons alleged to have been represented." Id. The paradigm example of adequate representation for issue-preclusion purposes is a class action, and the due-process protections identified in Taylor are contained in Federal Rule of Civil Procedure 23. The Court cautioned that "[a]n expansive doctrine of virtual representation ... would recognize, in effect, a common-law kind of class action," which would impermissibly "authorize preclusion based on identity of interests and some kind of relationship between parties and nonparties, shorn of the procedural protection" outlined in the Court's due-process cases and Federal Rule of Civil Procedure 23. Id. at 901 (discussing Hansberry v. Lee, 311 U.S. 32 (1940), Richards v. Jefferson Cnty., 517 U.S. 793 (1996), and Rule 23).

12

As Judge Cronan recently explained, adopting Figueredo Castillo's theory of mutuality of parties "would have far-reaching implications, opening the door for groups with members in multiple states to secure a favorable judgment in one circuit, then bind the government to that judgment in other circuits." Rubio v. Francis, No. 26-cv-264, 2026 WL 811178, at *11 (S.D.N.Y. Mar. 23, 2026); see also Herrera v. Noem, No. 26-cv-625, 2026 WL 800721, at *9-12 (D. Ariz. Mar. 12, 2026).

Perhaps as troubling, however, would be the consequence of Figueredo Castillo's theory in the event an association like the TPS Alliance loses in the first litigation. If there were mutuality of parties based on membership in the TPS Alliance, then that would mean that all members of the TPS Alliance would be similarly bound by an adverse decision in the Northern District of California litigation. That outcome would amount to precisely the kind of impermissible common-law class action that the Court in Taylor held would violate the due-process rights of nonparties.

Because Figueredo Castillo's argument in support of the merits of his TPS claim rests entirely on issue preclusion, and because it is clear that the December 10, 2025 decision is not issue preclusive, Figueredo Castillo has failed to show any

13

likelihood of success on the merits. Accord Herrera, 2026 WL 800721, at *9-12; Rubio, 2026 WL 811178, at *11.

**B.**

To obtain a preliminary injunction, Figueredo Castillo must also show that the absence of interim relief would cause him irreparable injury. According to Figueredo Castillo, the Government's decision to detain him is "in direct violation of the TPS statute," and thus "depriv[es] him of his Fifth Amendment due process rights to liberty and due process." ECF No. 3, at 8.

"In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." Basank v. Decker, 613 F. Supp. 3d 776, 788 (S.D.N.Y. 2020). However, "the favorable presumption of irreparable harm arises only after a plaintiff has shown a likelihood of success on the merits of the constitutional claim." Weisshaus v. Cuomo, 512 F. Supp. 3d 379, 390 (E.D.N.Y. 2021) (emphasis in original). "Thus, when a plaintiff seeks injunctive relief based on an alleged constitutional deprivation, 'the[se] two prongs of the preliminary injunction threshold merge into one.'" Id. (quoting Turley v. Giuliani, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000)).

Figueredo Castillo's claim that his detention is unconstitutional because he has TPS is an insufficient basis for irreparable injury because, as explained above, his issue-preclusion

14

argument is unlikely to succeed on the merits. When a party is unlikely to succeed on the merits of a constitutional claim, "any irreparable injury premised on th[at] claim[] alone cannot justify a preliminary injunction." Council for Responsible Nutrition v. James, 159 F.4th 155, 171 (2d Cir. 2025); see also We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 294 (2d Cir. 2021) ("[B]ecause [Plaintiffs] have failed to demonstrate a likelihood of success on their First Amendment or other constitutional claims ... Plaintiffs fail to meet the irreparable harm element simply by alleging an impairment of their Free Exercise right.").

## C.

The final two considerations in the preliminary-injunction analysis are whether issuing interim relief would be equitable and serve the public interest. "In a suit against the government, balancing of the equities merges into [the Court's] consideration of the public interest." SAM Party of N.Y. v. Kosinski, 987 F.3d 267, 278 (2d Cir. 2021); see also Team Kennedy v. Berger, 748 F. Supp. 3d 200, 222-23 (S.D.N.Y. 2024) (same).

Figueredo Castillo argues that issuing a preliminary injunction would "not harm the public interest but rather [would] promote[] it because [issuing interim relief would] uphold[] the rule of law." ECF No. 3, at 8. Figueredo Castillo

15

is correct that the public interest is served by protecting against the deprivation of constitutional rights. There is, however, a countervailing public interest in allowing the Government to enforce validly enacted immigration laws and regulations. "Here, if Respondents are correct that they may legally terminate Petitioner's TPS and consequently, detain and remove him, any injunction prohibiting the government from doing just that runs afoul of the above principle[]." Herrera, 2026 WL 800721, at *15.

Furthermore, the Supreme Court, when confronted with substantively identical claims by the TPS Alliance, determined that the balance of the equities and the public interest favored the Government. Nat'l TPS All. 146 S. Ct. at 24 ("Although the posture of the case has changed, the parties' legal arguments and relative harms generally have not."). "The Court must exercise its equitable discretion in light of" the Supreme Court's orders, "which further counsels against finding the balance of equities and public interest weigh in Petitioner's favor." Herrera, 2026 WL 800721, at *16.

*    *    *

Each of the Winter factors weighs against issuing interim relief. Figueredo Castillo's motion for a preliminary injunction with respect to his TPS claim is therefore **denied**.

16

### IV.

Figueredo Castillo also seeks a preliminary injunction ordering his release from custody on the ground that his detention is "not rationally related to any immigration purpose." ECF No. 1, at 10. But Figueredo Castillo has already been released from custody as a result of this Court's temporary restraining order. When the temporary restraining order expires, Figueredo Castillo will still be released. Thereafter, Figueredo Castillo may be arrested again, or he may not be — that is a matter for ICE to decide. If ICE does choose to rearrest Figueredo Castillo, however, ICE must respect his due-process rights, including, if appropriate, by providing him with a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that Figueredo Castillo is a risk of flight or a danger to the community. Figueredo Castillo's motion for a preliminary injunction with respect to his due-process claim is therefore **denied** without prejudice to his right to challenge any subsequent detention on any available statutory or constitutional grounds.

### V.

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, Figueredo Castillo's motion for a preliminary injunction with

17

respect to his TPS claim is **denied.** Figueredo Castillo's petition for a writ of habeas corpus and motion for a preliminary injunction with respect to his due-process claim are **denied** without prejudice to his right to challenge any subsequent detention on any available statutory or constitutional grounds.

The Clerk is respectfully requested to close this case.

**SO ORDERED.**

Dated:    New York, New York
          April 17, 2026

_____
                           John G. Koeltl
                  **United States District Judge**

18